FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

JAN 1 1 2008

JAMES N. HATTEN, CLERK
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ACRYLICON INTERNATIONAL, LTD., a foreign corporation, <br><br> Plaintiff, <br><br> v. <br><br> SILIKAL-AMERICA, INC., a Georgia Corporation; HUNDT INDUSTRIAL, LLC, a foreign limited liability company; CHRISTOPHER HUNDT, an individual; ANDREW MILLS, an individual; and PAUL SONDERMAN, an individual, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) CIVIL ACTION <br> FILE NO. 08-CV-0119 <br><br> JURY TRIAL DEMANDED |

**VERIFIED COMPLAINT FOR TRADEMARK
INFRINGEMENT AND RELATED CLAIMS**

COMES NOW, ACRYLICON INTERNATIONAL, LIMITED ("AcryliCon"), plaintiff herein, and for its Complaint against Defendants SILIKAL-AMERICA, INC., HUNDT INDUSTRIAL, LLC, CHRISTOPHER

HUNDT, ANDREW MILLS, and PAUL SONDERMAN, shows the Court as follows:

## SUMMARY OF ACTION

1.     AcryliCon brings this action for violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1051 et seq., federal unfair competition, violation of the Georgia Unfair and Deceptive Trade Practices Act, violation of the Georgia Trade Secrets Act, and breach of confidentiality agreements.

## PARTIES, JURISDICTION, AND VENUE

2.     Plaintiff AcryliCon is a corporation organized and existed under the laws of the United Kingdom, where it maintains its principal place of its business.

3.     Defendant Silikal-America, Inc. ("Silikal") is a corporation organized and existing under the laws of the State of Georgia, whose principal and registered place of business is located at 609B Fertilla Street, Carrollton, Georgia 30117.

4.     Defendant Hundt Industrial, LLC is, on information and belief, a Connecticut limited liability company, with its principal place of business located at 38 N Main Street, Essex, Connecticut 06426-1059.

2

5.    Defendant Hundt, on information and belief, is the owner and CEO of Hundt Industrial, LLC, and may be served with process at the LLC's address.

6.    Defendant Mills, on information and belief, is the General Director of Silikal, responsible for the management of the company's operations, and may be served with process at Silikal's place of business located at 609B Fertilla Street, Carrollton, Georgia 30117.

7.    Defendant Sonderman, on information and belief, is the President of Silikal, and he may be served with process at Silikal's place of business located at 609B Fertilla Street, Carrollton, Georgia 30117.

8.    This is a civil action for trademark infringement, unfair competition, passing off arising under the Lanham Act, as amended, 15 U.S.C. §§ 1051 et. seq., Georgia statutory law, and the common law of Georgia.

9.    This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1332, and 1338, and the principles of supplemental jurisdiction pursuant to 28 U.S.C. § 1367. The amount in controversy, exclusive of interest and costs, exceeds $75,000.00. The parties are citizens of different states.

10.    Additionally, this Court has personal jurisdiction over Defendants Hundt and Hundt Industries (collectively "The Hundt Defendants", pursuant to Georgia's long-arm statute, as the causes of action arise out of The Hundt

3

Defendants' actions in this state and The Hundt Defendants conducted business and tortious activity in this state, which are the basis of this action.

11.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## ACRYLICON'S PROPRIETARY FLOORING SYSTEM

12.    AcryliCon is in the business of marketing and installing industrial floors and has been since 1977.

13.    AcryliCon has a proprietary and trade secret flooring product that is exclusively used by and manufactured for AcryliCon.

14.    In 1999, AcryliCon filed trademark applications with the United States Patent and Trademark Office for the word mark "AcryliCon" and for the stylized word mark "AC AcryliCon" – for protection of its trademark for the goods and services of "commercial and industrial flooring, namely, floors formed from acrylic resin," and for the "installation, maintenance and repair of floor and wall coverings." These marks were registered in the United States Patent and Trademark Office, and they are outstanding and valid.    (True and correct copies of the Registrations are attached hereto as Exhibit "A.")

15.    The trademarks "AcryliCon" and "AC AcryliCon" are suggestive marks and, as such, are inherently distinctive.

4

16.    If the Court concludes that the marks are merely descriptive, there is no question that they have acquired a secondary meaning. AcryliCon has been continuously using the trademark "AcryliCon" in interstate commerce since 1977 in its business of marketing and installing industrial floors, and through its years of leadership in its industry and its worldwide reputation, the public has come to associate AcryliCon's name with its business.

## ACRYLICON'S RELATIONSHIP WITH SILIKAL GERMANY

17.    The exclusive manufacturer of AcryliCon's flooring system is a German company, Silikal GmbH & Co ("Silikal Germany"). Silikal Germany also manufactures and sells a separate line of flooring products under the Silikal name.

18.    As Silikal Germany has repeatedly confirmed, the AcryliCon system is different and is "worldwide exclusively the affair of AcryliCon and is not comparable to Silikal systems." In addition, Silikal Germany has confirmed in writing that it "will not . . . say or even imply that these systems are the same or display the same properties." (A true and correct copy of Silikal Germany's January 31, 2006 letter to Mr. Bjorn Hegstad of AcrylicCon containing these representations is attached hereto as Exhibit "B.")

5

19.     In addition, Silikal Germany has agreed not to compete with AcryliCon in various territories throughout the world.

20.     In or about 2003, Silikal Germany specifically committed not to compete with AcryliCon in the United States. By letter dated December 11, 2003, Silikal Germany advised that, with respect to "North America (USA, Canada and Mexico)" it did "not intend to set up agents . . . nor in fact sell Silikal products in these regions." (A true and correct copy of this letter is attached hereto as Exhibit "C".)

21.     Accordingly, AcryliCon proceeded with the development of its business in the United States as well as Mexico.

## ACRYLICON'S PRIOR RELATIONSHIP WITH DEFENDANTS

22.     Specifically, in early 2004, AcryliCon began negotiations with Defendant Paul Sonderman and certain of his colleagues, including Defendant Mills. At the time, Sonderman operated a company called Polymerica, Inc.

23.     In or about May of 2004, AcryliCon entered into an Exclusive License Agreement with Polymerica, pursuant to which AcryliCon licensed the use of its proprietary flooring system to Polymerica in the United States.

6

24.     The agreement was renewed in or about June of 2005 for an extended term.

25.     AcryliCon provided its confidential and proprietary information to Polymerica, including Defendants Sonderman, Hundt, and Mills.  Among other information, AcryliCon provided extensive written materials relating to the system, marketing and sales information, and photographs of flooring systems installed in facilities throughout the world.  Those photographs were especially important, as references or demonstrations of existing systems, which were critical tools in marketing the system to new customers.

26.     Each of the Defendants also attended extensive training sessions at AcryliCon's facility in Hitra, Norway.

27.     The provision of this information to the Defendants by AcryliCon, however, was expressly conditioned upon Defendants' written agreements to hold the information in confidence.  Thus, the parties entered into written confidentiality agreements, pursuant to which Defendants Sonderman, Hundt, and Mills each agreed to hold in confidence all information provided to them by AcryliCon, including but not limited to any and all information related to AcryliCon's business and proprietary flooring systems.  (True and correct copies of the Confidentiality Agreements are attached hereto as Exhibit "D.")

7

28.     In addition to providing extensive training, product and marketing information, and supplying its flooring system to Polymerica, AcryliCon also invested significant financial resources into the development of a North American supply and distribution network through Polymerica.

29.     Without any explanation, however, Polymerica and Sonderman abruptly advised in or about December of 2005 that they no longer wished to do business with AcryliCon and demanded that the Exclusive License Agreement be terminated.

30.     Next, Defendant Sonderman – with the involvement of Defendants Hundt and Mills –renamed their business Silikal-America, Inc. ("Silikal") and now distribute Silikal Germany's flooring systems in the United States.

## SILIKAL'S MISAPPROPRIATION OF ACRYLICON'S TRADE SECRETS

31.     Unfortunately, it has become apparent that the Defendants are misappropriating AcryliCon's trademarks and other proprietary, confidential, and trade secret information in connection with their marketing of Silikal products in the United States.

32.     Thus, in or around March 2007, Defendant Silikal sent several individuals to an important industry trade show in Boston, Massachusetts, known as

8

the Boston Fish Show (the "Show"), including Defendants Hundt and Mills (collectively "Silikal Representatives"). The Silikal Representatives staffed a table at the Show purporting to be promoting the Silikal flooring system.

33.     The table, among other things, displayed various photographs of what purported to be installations of Silikal flooring systems. (True and correct photographs of the Silikal display – taken by representatives of AcryliCon at the Show – are attached hereto as Exhibit "E.")

34.     On information and belief, these photographs had been used by Silikal and its representative repeatedly in connection with the marketing of its flooring systems.

35.     In fact, however, the floors shown in many of those photographs were actually floors that had been installed by AcryliCon using the AcryliCon system. For example, the floor shown in the photograph at the right side of the table at the Show is an AcryliCon system installed in 1989 at the Leif A. Larsen Fishindustry in Trondheim, Norway. (True and correct photographs of Silikal's display showing the AcryliCon installed floor, as well as earlier Acrylicon photographs of the same floor are attached hereto as composite Exhibit "F.")

36.     Similarly, the photograph in the center of the Silikal table at the Show – a close up of a perforated floor drain – is also of the AcryliCon floor at the

Larsen Fishindustry. (True and correct copies of Silikal's display showing the perforated drain, as well as earlier photographs of that detail of the Fishindustry floor are attached hereto as composite Exhibit "G.")

37.     The photograph with a blue tint at an angle at the left of the Silikal table at the Show depicts an AcryliCon system installed in 1995 at Fiskern Maritime in Oslo, Norway. (True and correct photographs of Silikal's display showing the AcryliCon installed floor, as well as earlier photographs of that AcryliCon installed floor are attached hereto as composite Exhibit "H.")

38.     Incredibly, therefore, Silikal was misrepresenting and passing off AcryliCon flooring systems as its own. Silikal, moreover, was using those misrepresentations as part of a blatant and apparently ongoing effort to lure customers to Silikal and away from Acrylicon.

39.     In addition to the improper use of these photographs, the Silikal Representatives at the Show, when questioned by an AcryliCon employee, stated that the Silikal floors were the same as AcryliCon floors anyway. Apparently, notwithstanding the representations in Silikal Germany's January 2006 letter, Silikal was misrepresenting this point as well in connection with its marketing of the Silikal system.

10

40.     Adding insult to injury, the Silikal Representatives made repeated derogatory and defamatory remarks regarding AcryliCon and its principals to numerous individuals at the Show.

41.     Sonderman, on information and belief, is directly aware of, involved in, and has specifically authorized the misconduct described herein.

42.     AcryliCon has demanded that Defendants cease this conduct, but Defendants have failed and refused to do so.

43.     Acrylicon has been damaged by Silikal's actions.

44.     All conditions precedent to the bringing of this action have been satisfied, performed, excused or waived.

## COUNT ONE
### (Infringement under Section 43(a) of the Lanham Act)

45.     AcryliCon re-alleges and incorporates by references the allegations in paragraphs 1 through 44 above, as though fully set forth herein.

46.     The general public recognizes AcryliCon's trademarks as being inherently distinctive and identifying AcryliCon's goods or services and distinguishing them from those of others.

11

47.     Moreover, AcryliCon has developed its products throughout its more than 30 years in the industry and has also developed a stellar reputation in the industry.

48.     Defendants have infringed AcryliCon's trademarks in interstate commerce by displaying at the Show photographs of AcryliCon floors as if they were Silikal floors, as a tool to advertise its products and services, photographs of floors purported to have been manufactured by Silikal, and stating that its floors were identical to those of AcryliCon.

49.     These acts constitute infringement of the trademark holder's rights under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), including implied passing off.

50.     Defendants' actions intentionally caused a likelihood of confusion among the relevant buyer class, namely persons seeking to purchase industrial flooring.

51.     In response to Defendants' actions, Acrylicon now requests that this Court find that Silikal has infringed AcryliCon's duly licensed marks.

52.     As a direct and proximate result of Defendants' wrongful conduct, AcryliCon has been damaged in an amount to be proven at trial, which includes the loss of sales of its products, its reputation and goodwill. Pursuant to 15 U.S.C. §

1117, AcryliCon is entitled to recover Defendants' profits, AcryliCon's damages, and the attorneys' fees, costs, and expenses which AcryliCon has incurred in this action.

## COUNT TWO
### (Federal Unfair Competition)

53.    AcryliCon re-alleges and incorporates by reference the allegations in paragraphs 1 through 52 above, as though fully set forth herein.

54.    Defendants' actions, including displaying photographs of AcryliCon floors as if they were Silikal floors, to intentionally confuse consumers into believing that the floors in the photograph were actually Silikal floors constitute unfair competition in violation of Sections 43 and 44 of the Lanham Act, 15 U.S.C. §§ 1125 and 1126.

55.    Moreover, Defendants acted with the intent to deceive the public.

56.    As a direct and proximate result of Defendants' wrongful conduct, AcryliCon has been damaged in an amount to be proven at trial, which includes the loss of sales of its products, its reputation and goodwill.  Pursuant to 15 U.S.C. § 1117, AcryliCon is entitled to recover Defendants' profits, AcryliCon's damages, and the attorneys' fees, costs, and expenses which AcryliCon has incurred in this action.

## COUNT THREE
### (Trademark Infringement and Unfair Competition under Georgia Law)

57. AcryliCon and incorporates by reference the allegations in paragraphs 1 through 56 above, as though fully set forth herein.

58. Defendants' actions, including displaying photographs of AcryliCon floors as if they were Silikal floors, to intentionally confuse consumers into believing that the floors in the photograph were actually Silikal floors constitute trademark infringement and unfair competition in violation of O.C.G.A. § 23-2-55.

59. Moreover, Defendants acted with the intent to deceive the public.

60. As a direct and proximate result of Defendants' wrongful conduct, AcryliCon has been damaged in an amount to be proven at trial, which includes the loss of sales of its products, its reputation and goodwill. AcryliCon is entitled to recover actual damages, Defendants' profits, and the attorneys' fees, costs, and expenses which AcryliCon has incurred in this action.

61. In addition, Defendants' infringement and unfair competition were fraudulent, willful, and malicious, such that it raises the presumption of a conscious indifference to the consequences of their actions, thereby entitling AcryliCon to an award of exemplary damages in an amount to be determined by the enlightened conscience of the jury.

## COUNT FOUR
### (Trademark Infringement and Unfair Competition under
### the Common Law of Georgia)

62.     AcryliCon re-alleges and incorporates by reference the allegations in
paragraphs 1 through 61 above, as though fully set forth herein.

63.     Defendants' actions, including displaying photographs of AcryliCon
floors as if they were Silikal floors, to intentionally confuse consumers into
believing that the floors in the photograph were actually Silikal floors constitute
trademark infringement and unfair competition in violation of the common law of
Georgia.

64.     Moreover, Defendants acted with the intent to deceive the public.

65.     As a direct and proximate result of Defendants' wrongful conduct,
AcryliCon has been damaged in an amount not yet precisely ascertainable but
including the loss of sales of its products, its reputation and goodwill.

66.     In addition, Defendants' infringement and unfair competition were
fraudulent, willful, and malicious, such that it raises the presumption of a
conscious indifference to the consequences of their actions, thereby entitling
AcryliCon to an award of exemplary damages in an amount to be determined by
the enlightened conscience of the jury.

## COUNT FIVE
### (Deceptive or Unfair Trade Practices by Silikal)

67.    AcryliCon re-alleges and incorporates by reference the allegations in paragraphs 1 through 66 above, as though fully set forth herein.

68.    Defendants' actions, including displaying photographs of AcryliCon floors as if they were Silikal floors, to intentionally confuse consumers into believing that the floors in the photograph were actually Silikal floors, and its representatives disparaging remarks regarding AcryliCon to potential customers constitute deceptive trade practices under O.C.G.A. §§ 10-1-372(a)(1), (3), (5), (7), and (8) of Georgia's Uniform Deceptive Trade Practices Act.

69.    Moreover, Defendants acted with the intent to deceive the public.

70.    As a direct and proximate result of Defendants' wrongful conduct, AcryliCon has been damaged in an amount not yet precisely ascertainable but including the loss of sales of its products, its reputation and goodwill.

71.    As a result of Defendants' willfully engaging in trade practices knowing them to be deceptive, AcryliCon is entitled to recover its attorneys' fees, as provided for in O.C.G.A. § 10-1-373(b)(2).

## COUNT SIX
### (Misappropriation of Trade Secrets)

72. AcryliCon re-alleges and incorporates by reference the allegations in paragraphs 1 through 71 above, as though fully set forth herein.

73. This is a claim for misappropriation of trade secrets in violation of the Georgia Trade Secrets Act.

74. The individual Defendants were formerly associated with AcryliCon as employees and principals of AcryliCon's licensee.

75. In that capacity, Defendants were privy to "trade secrets" of AcrilyCon within the meaning of O.C.G.A. § 10-1-761(4), the Georgia Trade Secrets Act, including, but not limited to, technical and nontechnical data, formulas, programs, devices, methods, techniques, processes, product plans, and other trade secrets related to the products, installation methods, sales methods, etc., for industrial floors which AcryliCon has been developing since its inception in 1977. The aforesaid trade secrets "[d]erive... economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and [are] the subject of efforts that are reasonable under the circumstances to maintain [their] secrecy" within the meaning of O.C.G.A. § 10-1-761(4).

76.    Due to the nature of the trade secrets with which Defendants became familiar, they signed Confidentiality Agreements with AcryliCon before their exposure to these trade secrets. (See, Exhibit "D" hereto.)

77.    Notwithstanding these commitments, Defendants began working for Silikal, selling a competing flooring system.

78.    Upon information and belief, Defendants are misappropriating AcryliCon's trade secrets by disclosing them to Silikal and utilizing the trade secrets to sell Silikal industrial floors.

79.    Defendants' misappropriation is willful, intentional and malicious.

80.    Unless Defendants are enjoined from continuing to misappropriate AcryliCon's trade secrets, AcryliCon will suffer immediate and irreparable injury for which there is no adequate remedy at law.

81.    As a direct and proximate result of Defendants' wrongful conduct, AcryliCon has been damaged in an amount to be proven at trial, but which includes the loss of sales of its products, its reputation and goodwill. AcryliCon is entitled to recover its "actual loss caused by the misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss" within the meaning of O.C.G.A. § 10-1-763(a). AcryliCon is also

entitled to recover exemplary damages from Defendants pursuant to O.C.G.A. § 10-1-763(b) because willful and malicious appropriation has occurred.

82.     AcryliCon is also entitled to recover its attorneys' fees and expenses pursuant to O.C.G.A. § 10-1-764.

## COUNT SEVEN
## (Breach of Contract Against Individuals)

83.     AcryliCon re-alleges and incorporates by reference the allegations in paragraphs 1 through 82 above, as though fully set forth herein.

84.     This is an action for breach of contract.

85.     AcryliCon and Silikal Representative entered into written Confidentiality Agreements agreeing, among other provisions, to hold all AcryliCon information in confidence. (See, Exhibit "D" hereto.)

86.     Defendants have disclosed AcryliCon information without authorization in violation of the Confidentiality Agreements, thereby breaching the Agreements.

87.     As a direct and proximate result of the breaches, AcryliCon has suffered damages in an amount to be determined at trial.

88.     Defendants have acted in bad faith, have been stubbornly litigious, and have caused AcryliCon such unnecessary trouble and expense so as to

19

authorize the recovery of AcryliCon's reasonable attorneys' fees and expenses pursuant to O.C.G.A. § 13-6-11.

## COUNT EIGHT
### (Demand for Preservation of Evidence, including Electronically Stored Information (ESI"))

89.     AcryliCon re-alleges and incorporates by reference the allegations in paragraphs 1 through 87 above, as though fully set forth herein.

90.     AcryliCon hereby demands, pursuant to the Federal Rules of Civil Procedure, that Defendants preserve and refrain from destroying any and all evidence, including electronically stored information ("ESI"), which relates to, discusses, or pertains to any of the subject matter described in this Complaint. Such evidence includes documents, correspondence, electronic mail ("e-mail"), memoranda, data, meta data, computer programs, photographs, videotapes, and other evidence stored physically or electronically on computers, computer hard drives, personal digital assistants ("PDAs"), Blackberry devices, or other devices.

## **PRAYER FOR RELIEF**

WHEREFORE, AcryliCon prays that it is entitled to judgment that:

(a)     A preliminary and permanent injunction enjoining Defendants from misappropriating AcryliCon's trade secrets and from utilizing AcryliCon's proprietary information, including photographs of AcryliCon floors, to sell its product;

(b)     A judgment awarding AcryliCon damages it has suffered as a result of Defendants' conduct, including exemplary damages for Defendants' willful and malicious misappropriation of AcryliCon's trade secrets;

(c)     An award of all attorneys' fees, costs, and expenses incurred by AcryliCon;

(d)     A trial by jury pursuant to Fed. R. Civ. P. 38 as to all issues triable by a jury; and

(e)     A judgment awarding AcryliCon any such other and further relief as the Court may deem just and proper.

This _10th_ day of January, 2008.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ACRYLICON                          )
INTERNATIONAL, LTD., a             )
foreign corporation,               )
                                   )
    Plaintiff,                     )
                                   )    CIVIL ACTION
                                   )    FILE NO. _____
v.                                 )
                                   )
SILIKAL-AMERICA, INC., a           )
Georgia Corporation; HUNDT         )
INDUSTRIAL, LLC, a foreign         )
limited liability company;         )
CHRISTOPHER HUNDT, an              )
individual; ANDREW MILLS, an       )
individual; and PAUL               )
SONDERMAN, an individual,          )
                                   )
    Defendants.                    )

## VERIFICATION

                       *on behalf of ~~ACI~~*

I, Bjorn Hegstad, ~~President~~ of Acrylicon International, Ltd., verify

under penalty of perjury under the laws of the United States of America that

the foregoing is true and correct to the best of my knowledge and belief.

    Executed this *10*th day of January, 2008.

                                   _____
                                   Bjorn Hegstad

FELLOWS LABRIOLA LLP

Henry D. Fellows, Jr.
Georgia Bar No. 257825
Kevin P. Weimer
Georgia Bar No. 745979

225 Peachtree Street, N.E.
Suite 2300 South Tower
Atlanta, Georgia 30303
Telephone: (404) 586-9200
Facsimile: (404) 586-9201

Attorneys for Plaintiff
ACRYLICON INTERNATIONAL, LTD.

COFFEY BURLINGTON
Kevin C. Kaplan
Florida Bar No.933848
Gabriel Groisman
Florida Bar No. 25644
2966 South Bayshore Drive
Penthouse
Miami, Florida 33133
(305) 858-2900

22